# Holmes's Appeal.

1. The proceeds of a minor's real estate sold under the Act of April 18th 1853 (Price Act) passes as land; the sale is not to raise money for the minor.

2. The last clause of 2d proviso of the 7th section does not apply to the party claiming the descent, but to the party whose property is changed by the sale.

APPEAL by Letitia Holmes from the decree of the Orphans' Court of *Allegheny county*, distributing the estate of William J. Holmes and Letitia C. Holmes, minor children of James Holmes, deceased, in the hands of William B. Holmes, their guardian.

The following statement of facts and extract from the report of the auditor appointed by the Orphans' Court, will exhibit the

[Holmes's Appeal.]

question decided by the Supreme Court: James Holmes, the father, died intestate in May 1862, leaving a widow, Letitia, and two children, the above-named minors. The decedent owned at the time of his death, besides other estate, real estate in Venango county, which, by order of the Orphans' Court, under the Act of April 18th 1853 (the Price Act), was, on the 1st day of October 1864, sold and conveyed by the guardian for $100,000. William J. Holmes, one of the children, died in his minority on the 4th day of November 1864, and administration of his estate was granted to his mother, the appellant. The fund in the hands of the guardian included proceeds of personal estate and of other real estate besides the Venango land, the question decided in the Supreme Court relating only to the latter. The account was referred to the Hon. Walter H. Lowrie for distribution, who on this question reports:—

" The auditor is of opinion, however, that by no one of these sales was the land in legal contemplation, and as an object of descent and distribution, converted into personalty, and that it must be treated as land, and not as money, in its descent from William J. Holmes on his death. This decision seems to be plainly required by the first clause of the proviso already referred to, for it declares that no sales under that act shall change the course of descent of property by changing its nature. And this clause is in entire harmony with the general purposes of the law to which it belongs, which would seem to be, not to apply the land or its value to present necessities, but to hand it over in a better condition to those who, at a future time, are to have the full power of disposal of it, and changing it only so far as change would seem to be a benefit to those concerned. When, under other laws, a sale becomes necessary for the payment of debts or other maintenance of minors, it usually works a conversion : 11 S. & R. 224 ; 4 Barr 359 ; 8 Harris 515. And yet not so when sale is for partition: 5 Watts 113 ; 6 Id. 33. Because in one case money to be spent is the object of the proceeding, and in the other not.

" The auditor is therefore of opinion that the proceeds of the sale of the land in Venango and Allegheny counties, so far as the same arise from the shares of the wards, are held by the guardian with all the descendible qualities of real estate, and that on the death of William J. Holmes, his share descended to his mother for life, with remainder in fee simple to his sister Letitia, and that the profit and income of the said share, up to the time of his death, is personal estate, and goes to his administratrix, his mother, for her own use ;" and he reported distribution accordingly.

The report of the auditor was, after exceptions by Letitia

[Holmes's Appeal.]

Holmes, the administratrix, confirmed by the Orphans' Court; the confirmation after appeal by her was assigned for error.

*A. H. Miller* and *G. Shiras,* for appellant.—By the Intestate Act of 1833, this fund will pass to the minor as personalty. Surplus money arising from the sale of land by order of the Orphans' Court, whether belonging to an infant or one of full age, is personal estate: Grider *v.* McClay, 11 S. & R. 224; Dyer *v.* Cornell, 4 Barr 363; Pennell's Appeal, 8 Harris 517. The object of the Act of 1853 was to authorize the conversion of unproductive and trammelled real estate, and when the sale was perfected in this case, there was a complete conversion of land into money. The 6th section provides that the purchase-money, &c., shall be substituted for the real estate, and those entitled to a present interest shall receive only the interest of the proceeds unless directed to accumulate. The proviso and section apply only to those entitled to *interest* of the principal. The 7th section provides for making and taking conveyances for partition, &c.; to this is the proviso, that no purchase or sale by authority of this act shall change the course of transmission of the property. On this section the appellee relies. Here the land was changed into money, and that fulfilled the functions of the act. Had the child arrived at age he could demand the fund from his guardian, and the guardian would have been compelled to apply whatever was required for his necessities while a minor.

*Burgwin,* for appellee. (There was no paper-book furnished.)

The opinion of the court was delivered, January 7th 1867, by

THOMPSON, J.—I have always regarded the Act of 1853, "Relating to the sale and conveyance of real estate," as a beneficial enactment, and, being remedial in its character, to be expounded liberally. It certainly affords the means of unfettering titles to real estate, and clearing them from the trammels of contingent and executory interests, so that it may be held and enjoyed in safety by the purchasers. So, by it, unproductive and unimproved property of minors, and others not *sui juris,* to the extent of whatever their interest may be, without changing its ultimate destination, may be converted into reasonable productiveness, at least to the extent of the ordinary rates of interest on the money substituted for the land; and sales may be made whether the fund raised be needed for maintenance and education or not. Carefully executed, the law may be, and is, productive of many good and desirable results.

In the case before us, we have the simple question whether the real estate of William J. Holmes, a minor, deceased, which

descended to him from his father, and was sold by order of court in his lifetime under the Act of 1853, was a conversion of it into personalty, or whether the fund substituted retained the descendible quality of the estate sold. If the former (personalty), then the appellant, the mother, would be entitled to it absolutely; if the latter, she would be entitled to the interest for life: Act of 1833, § 3, Brightly's Dig. 563, pl. 15.

On this point the act speaks plainly. In the 6th section it is provided that, "The purchase-money * * * * * shall in all respects be substituted for the real estate sold * * * * * as regards the enjoyment and ownership thereof, after the payment of liens, and shall be held for, or applied to, the use and benefit of the same persons and for the same estate, and interest present or future, vested, contingent or executory, as the estate sold * * * * * had been held; * * * * * and those entitled to a present interest in such real estate, shall receive the interest of the proceeds or rents thereof, unless expressly directed to accumulate."

And again, in the second proviso to the 7th section, the language is, " that no purchase or sale by authority of this act shall change the course of descent, or transmission of any property changed in its nature, by virtue thereof as respects persons who are not of competent ability to dispose of it." This provision is general, although it appears in a section relating principally to the powers of trustees, guardians, committees, married women and corporations. Strictly it is not a *proviso* to anything preceding it; it is an independent provision, which, by usage in our legislation, is often introduced by way of *proviso*. It is not possible to disregard these provisions in the act, and declare that notwithstanding the conversion of the minor's estate was complete under the act in his lifetime and at his death, it passed as personalty. The act does not mean this. The sale was not made for the purpose of raising money for him. Before making the order, the court were satisfied that the change from land to money substituted for the land, would be best for his interest, and it was that which moved the court to make the order. We must therefore hold that this change did not change the character in which the substitute is to pass to those entitled. It must pass as land: Greenawalt's Appeal, 1 Wright 95. So thought the auditor and court.

It seems to me, the last clause in the second proviso to the 7th section, quoted above, is misunderstood by the learned counsel, if I understand them. They seem to read it as applying to the party claiming the descent, while it is quite manifest it only applies, in a case like this at least, to the party whose property has been changed by the sale. In other words, as Mrs. Holmes was competent to dispose of the substitute for the land, it seems

to be thought that that part of the proviso has no application to the case. It is quite certain, however, that this is incorrect; its application is to the son whose estate was sold while he was a minor and incompetent to dispose of it. Had he been of age, he might have disposed of the proceeds as money and not land.

We are not disposed, at this time, to decide more than is necessary for this case, or to attempt to resolve all the difficulties, mostly prospective, suggested by the able counsel for the appellant, and especially so, as the appellees have not favored us with any answer or research on the other side. No doubt the difficulties alluded to will all be resolved in due time and in their appropriate place.

The entire argument was devoted to the point we have principally discussed, and the specific error supposed to be embraced by the 2d exception, has not been shown, and we have failed to perceive it in our own investigations. The 3d exception is general, and we are not required to notice it. We see nothing wrong in the conclusion of the learned auditor, and of course nothing wrong in the court in confirming his report

Decree affirmed at the costs of the appellant.